# CIVIL COVER SHEET

**APPENDIX B**

..l cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required ..cept as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the ..ie Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| . (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| FIBERLINK COMMUNICATIONS CORPORATION<br>794 Penllyn Pike<br>Blue Bell, PA 19422 | EMERGENT TECHNOLOGIES, INC.<br>7117 Florida Boulevard<br>Baton Rouge, LA 70806 |

**(b)** County of Residence of First Listed Plaintiff  Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed  Baton Rouge
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

| **(c)** Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Thomas S. Biemer, Esquire (215) 575-7000<br>John J. Higson, Esquire<br>Dilworth Paxson LLP<br>1735 Market Street, 32nd Floor, Philadelphia, PA 19103 | EMERGENT TECHNOLOGIES, INC.<br>7117 Florida Boulevard<br>Baton Rouge, LA 70806 |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [x] 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PLF | DEF | | PLF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [ ] 1 | Incorporated or Principal Place of Business in This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business in Another State | [ ] 5 | [x] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [x] 190 Other Contract
- [ ] 195 Contract Product Liability

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

*PERSONAL INJURY*
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury

*PERSONAL INJURY*
- [ ] 362 Personal Injury— Med. Malpractice
- [ ] 365 Personal Injury — Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

*PERSONAL PROPERTY*
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 444 Welfare
- [ ] 440 Other Civil Rights

**PRISONER PETITIONS**
- [ ] 510 Motions to Vacate Sentence
  Habeas Corpus:
- [ ] 530 General
- [ ] 535 Death Penalty
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition

**FORFEITURE/PENALTY**
- [ ] 610 Agriculture
- [ ] 620 Other Food & Drug
- [ ] 625 Drug Related Seizure of Property 21 USC
- [ ] 630 Liquor Laws
- [ ] 640 R.R. & Truck
- [ ] 650 Airline Regs.
- [ ] 660 Occupational Safety/Health
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Mgmt. Relations
- [ ] 730 Labor/Mgmt.Reporting & Disclosure Act
- [ ] 740 Railway Labor Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 840 Trademark

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce/ICC Rates/etc.
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 810 Selective Service
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 875 Customer Challenge 12 USC 3410
- [ ] 891 Agricultural Acts
- [ ] 892 Economic Stabilization Act
- [ ] 893 Environmental Matters
- [ ] 894 Energy Allocation Act
- [ ] 895 Freedom of Information Act
- [ ] 900 Appeal of Fee Determination Under Equal Access to Justice
- [ ] 950 Constitutionality of State Statutes
- [ ] 890 Other Statutory Actions

## V. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
(Cite the U.S. Civil Statute under which you are filing and write brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

Breach of Contract Action 28 U.S.C. 1332 - Breach of communications service agreement.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ 1,004,500

CHECK YES only if demanded in complaint:
JURY DEMAND:  [ ] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE _____  DOCKET NUMBER _____

DATE  1/17/03

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

**IN THE UNITED STATES DISTRICT COURT**   APPENDIX C
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**CASE MANAGEMENT TRACK DESIGNATION FORM**

FIBERLINK COMMUNICATIONS CORPORATON       :                            CIVIL ACTION

                                          :

          v.                          :

EMERGENT TECHNOLOGIES, INC.               :

                                          :                            NO.

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1.03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a)   Habeas Corpus -- Cases brought under 28 U.S.C.
      §2241 through §2255.                                                    ( )

(b)   Social Security -- Cases requesting review of a
      decision of the Secretary of Health and Human
      Services denying plaintiff Social Security Benefits.                   ( )

(c)   Arbitration -- Cases required to be designated for
      arbitration under Local Civil Rule 53.2.                               ( )

(d)   Asbestos -- Cases involving claims for personal
      injury or property damage from exposure to
      asbestos.                                                              ( )

(e)   Special Management -- Cases that do not fall into
      tracks (a) through (d) that are commonly referred
      to as complex and that need special or intense
      management by the court. (See reverse side of
      this form for a detailed explanation of special
      management cases.)                                                     ( )

(f)   Standard Management -- Cases that do not fall into
      any one of the other tracks.                                           (✓)

January 17, 2003                              Thomas S. Biemer _____
_____                           _____
**Date**                                      **Attorney-at-law**

                                              Plaintiff
                                              _____
                                              **Attorney for**

(Civ. 660)  7/95



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FIBERLINK COMMUNICATIONS                :
CORPORATION,                                          :        CIVIL ACTION NO.
794 Penllyn Pike,                                        :
Blue Bell, PA 19422,                                   :        O3-250
                                  Plaintiff,              :
                                                                :
                    v.                                        :
                                                                :
EMERGENT TECHNOLOGIES, INC.           :
7117 Florida Blvd.                                     :
Baton Rouge, LA 70806,                            :
                                  Defendant.          :

## COMPLAINT

Plaintiff, Fiberlink Communications Corporation, through its undersigned counsel, brings

this Complaint and, in support thereof, avers as follows:

**I.     PARTIES**

1.      Plaintiff, Fiberlink Communications Corporation ("Fiberlink"), is a Pennsylvania

corporation with its principal place of business at 794 Penllyn Pike, Blue Bell, Pennsylvania

19422.  Fiberlink is a leading provider of Internet-based virtual private network connections.

2.      Defendant, Emergent Technologies, Inc. ("Emergent"), is a Louisiana corporation

with its principal place of business at 7117 Florida Blvd., Baton Rouge, Louisiana 70806.

**II.    JURISDICTION AND VENUE**

3.      This court has jurisdiction pursuant to 28 U.S.C. § 1332 by reason of the diversity

of citizenship of the parties, being citizens of different states, and an amount in controversy,

exclusive of interest and costs, in excess of $75,000.

479710

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. In addition, venue and jurisdiction are proper in that the parties expressly subjected themselves to the venue and jurisdiction of this court when they entered into the contract at issue in this case.

III.    **FACTUAL BACKGROUND**

5.      In January, 2002, Fiberlink and Emergent entered into a Communications Services Agreement whereby Fiberlink agreed to, among other things, provide secure global Internet remote access and related services to Emergent (the "Agreement"). [A copy of the Agreement is attached hereto as Exhibit "A"].

6.      Pursuant to the Agreement, Emergent was required to make certain minimum monthly payments to Fiberlink for services for a period of 39 months. Specifically, the Agreement required Emergent to pay Fiberlink a minimum of $2,500 for month 3, a minimum of $5,000 per month for months 4 through 9, a minimum of $12,000 per month for months 10 through 15, a minimum of $25,000 per month for months 16 through 27 and a minimum of $50,000 per month for months 28 through 39.

7.      The Agreement also provided that, in the event Emergent cancelled the Agreement prematurely, Emergent must pay Fiberlink for all services provided through the date of the cancellation "plus a cancellation charge equal to the minimum amount that, but for the cancellation, would have been due for the unexpired term" of the Agreement. [Exhibit "A", ¶ 8].

8.      Pursuant to the Agreement, Emergent can be deemed to have cancelled the Agreement if it failed to make full payments to Fiberlink of all past amounts due after receiving notice of non-payment from Fiberlink.

9.      Despite due demand and notice of failure to make required payments, Emergent has not made any payments to Fiberlink in accordance with the Agreement.

## COUNT I – BREACH OF CONTRACT

10.    Fiberlink incorporates by reference paragraphs 1 through 9 as though set forth herein.

11.    Pursuant to the terms of the Agreement, Emergent agreed to pay certain minimum monthly charges to Fiberlink.

12.    Fiberlink has satisfied all conditions precedent required for payment under the Agreement.

13.    Despite due demand, Emergent has not made any payments to Fiberlink in accordance with the Agreement and has not otherwise complied with the terms of the Agreement.

14.    Emergent has prematurely cancelled the Agreement and/or is in default and breach of the Agreement.

15.    In the event of cancellation, Emergent agreed to pay Fiberlink all minimum monthly payments due under the Agreement.

16.    As a result of Emergent's early cancellation of the Agreement, Emergent is contractually obligated to make payment to Fiberlink in an amount no less than $1,004,500.

17.    In addition, Fiberlink has suffered actual damages as a result of Emergent's default and breach of the terms and conditions of the Agreement.

WHEREFORE, Fiberlink Communications Corporation respectfully demands judgement in its favor and against Emergent Technologies, Inc. in the amount of at least $1,004,500, or alternatively for actual damages in an amount to be proven at trial, plus prejudgment interest, costs, attorney's fees, and such other and further relief as this Court deems just and proper.

Thomas S. Biemer (Pa. No. 62644)
John J. Higson (Pa. No. 80720)
DILWORTH PAXSON LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103
(215) 575-7000

Attorneys for Fiberlink Communications
Corporation

Dated: January 17, 2003

Exhibit A



## COMMUNICATIONS SERVICES AGREEMENT

THIS AGREEMENT is entered into on the 1st day of February, 2002 by and between Fiberlink Communications Corporation , a Pennsylvania corporation ("Fiberlink"), with its principal office located at 794 Penllyn Pike, Blue Bell, Pennsylvania 19422 and Evergreen Technologies , a Louisiana corporation ("Customer"), with its principal office located at 7117 Florida Blvd. Suite 101 Baton Rouge, LA 70806

Background: Fiberlink is a leading provider of global remote access, dedicated digital telecommunications and Internet access services, and ancillary services, to commercial users. Customer has requested Fiberlink to provide certain telecommunications services as described in Fiberlink Quote #KH20-ET, which is attached to this Agreement as Exhibit A and incorporated in this Agreement.

NOW THEREFORE, intending to be legally bound, the parties agree as follows:

1.  **SERVICES TO BE PROVIDED:** Fiberlink will provide Customer with the telecommunications services as described in Exhibit A ("Services"). The parties may provide for additional Services by entering into written addendums or amendments to this Agreement, which addendums or agreements shall be incorporated in this Agreement.

2.  **TERM:** The Term of this Agreement shall commence upon the date it is signed by both parties and shall continue until the end of the Service Commitment Period. The date on which Services are first available to Customer shall be the Start of Service Date and shall be the first day of the Service Commitment Period. Both parties will use their best efforts to expedite the Start of Service.

3.  **AUTOMATIC EXTENSION OF SERVICES:** The Service Commitment Period for each service shall automatically be extended for a period of ninety (90) days unless Fiberlink receives a written notice of termination from Customer ninety (90) days before the end of such Service Commitment Period. The charges for the services during any extension shall be the current Fiberlink published month-to-month charges for such services at the expiration of the preceding Service Commitment Period.

4.  **CUSTOMER RESPONSIBILITIES:** Customer has sole responsibility for installation, testing and operation of facilities services and equipment, including customer premises equipment, ("Customer Facilities") unless specifically provided by Fiberlink as part of the Services. In no event will the untimely installation or non-operation of Customer Facilities (including local access when Customer is responsible therefor) relieve Customer of its obligation to pay for the Services as of Start of Service.

5.  **ADDITIONAL CHARGES:** All charges in the Fiberlink Quote are computed by Fiberlink exclusive of any applicable federal, state, or local use, excise, gross receipts, sales and privilege taxes, duties, fees or similar liabilities, whether charged to or against Fiberlink or Customer for the Services provided to Customer ("Additional Charges"). Customer shall pay all Additional Charges. Customer also shall pay all one-time charges related to the contracting and/or coordinating of any Customer premise wiring required to complete installation. Customer is responsible for all additional charges associated with use of ISDN, toll-free lines and all other services provided on a charge basis, unless specifically contracted for under the terms of this Agreement.

6.  **PAYMENT OF CHARGES:** Payment for all fixed recurring charges and all installation and other non-recurring charges shall be due in advance on the first day of the month. Charges for any partial month shall be pro-rated. Usage-based charges shall be invoiced monthly and shall be due net thirty (30) days from the invoice date. Customer shall pay Fiberlink at the address on Fiberlink's invoices. If Customer does not pay Fiberlink's invoice in full on or before the due date, Customer also shall pay a late fee in the amount of the lesser of two percent (2%) of the unpaid balance per month or the maximum rate allowed under applicable state law.

7.  **SUSPENSION OF SERVICE:** If payment in full is not received from Customer on or before the due date, Fiberlink, after giving Customer ten (10) days notice, may suspend all or any portion of the Services until such time as Customer has paid in full all charges then due, including late fees. As a condition of reinstituting Services to Customer, Fiberlink may require a deposit of up to the amount billed to Customer by Fiberlink for the preceding three (3) months and payment in advance of the cost of reinstituting the Services. If Customer fails to make full payment of all past due payments due, including any deposit and reinstitution of Services fee, within ten (10) days after the date of suspension of any Services, Customer will be deemed to have canceled the Services effective as of the date of suspension, and Customer will be responsible for all charges payable by Customer upon Customer's cancellation of Services before the end of the Service Commitment Period(s).

8.  **CANCELLATION OF SERVICE:** Customer may cancel for convenience all or a portion of any Services by providing written notice of cancellation to Fiberlink thirty (30) days in advance of the effective date of cancellation. In such case, Customer shall pay Fiberlink for all Services provided through the effective date of such cancellation plus a cancellation charge equal to the minimum amount that, but for the cancellation, would have been due for the unexpired term of the Service Commitment Period. It is understood and agreed that Fiberlink's damages in the event of cancellation of any Service or Services are difficult or impossible to ascertain and that the provisions of this section are intended to establish liquidated damages in the event of cancellation and are not intended as a penalty.

9   **ACCEPTABLE USE POLICY:** Customer is obligated to comply with Fiberlink's Acceptable Use Policy ("AUP"), which is available at the following URL: (www.fiberlink.com). Fiberlink reserves the right, in its sole discretion, to amend, modify or change the AUP at any time without prior notice to Customer. Any amendments to the Fiberlink AUP shall be effective upon posting to the URL. Customer is obligated to ensure that Customer end-users comply with the terms of the policies and conditions of Fiberlink's current AUP. Fiberlink may immediately suspend the Services or terminate this Agreement upon violation of the AUP. If Fiberlink is informed by government authorities of inappropriate or alleged illegal use of Fiberlink facilities or other networks accessed through Fiberlink, Fiberlink in its sole discretion may terminate Customer's Service and provide any information in its possession to such authorities without notice to or the permission of Customer or any third parties.

10  **INTERNET USAGE:** The following provisions apply to all Internet and remote access Services:

    (a)  Fiberlink will provide Customer with the installation and operation of Internet service over transmission facilities provided by Fiberlink or third parties between Fiberlink-designated termination points in cities served by Fiberlink.

(b)     Customer shall be responsible for user access security and network access, including which users use the Services. Fiberlink provides no user access security with respect to any of its customers' facilities or facilities of others connected to the Internet. Fiberlink will use reasonable efforts to assist Customer in network security breach detection or identification, but shall not be liable for any inability, failure or mistake in doing so. Customer will be solely liable for all calls placed through its Internet access accounts regardless of whether Customer authorized said calls, and Customer will indemnify and hold Fiberlink harmless from and against any and all claims arising out of or generated by reason of Customer's remote access account worldwide.

(c)     Neither Fiberlink nor its subcontractors warrant any connection to or transmission over any network or facilities provided under this Agreement. The Customer is responsible for assessing its own computer and transmission network needs and the results desired. Use of any information obtained through the Services is at the Customer's sole risk. Fiberlink specifically denies any responsibility for the accuracy or quality of information obtained through the Services. Fiberlink does not warrant that the Services or equipment will meet specific requirements or the operation of the Services or equipment will be uninterrupted or error-free.

11.   SERVICES WARRANTY; GENERAL LIMITATION OF LIABILITY:  Fiberlink warrants that the Services will be provided to Customer in substantial accordance with prevailing telecommunications industry standards ("Technical Standards"). Fiberlink will use commercially reasonable efforts under the circumstances to remedy any interruptions, omissions, mistakes, accidents or errors in the Services (hereinafter "Defects") and restore the Services substantially in accordance with the Technical Standards. If Customer reports a Defect to Fiberlink and Fiberlink is unable to restore the Services as warranted within one (1) hour of such report, Customer shall upon request directed to Customer's designated Customer Service Representative within sixty (60) days of such report, receive a credit at the rate of 1/1440 of the monthly charges applicable to the affected Service for each half hour or major fraction thereof in excess of the first hour that the affected Service fails to substantially conform to the Technical Standards. If the Services fail to substantially conform to the Technical Standards over a continuous period of thirty (30) days after written notice of such nonconformity by Customer to Fiberlink, Customer may terminate the affected portion of the Services without a cancellation charge, provided that the Defect is not caused or contributed to, directly or indirectly, by any act or omission of Customer or its customers, affiliates, agents, representatives, invitees or licensees.

THE FOREGOING WARRANTY AND REMEDIES ARE EXCLUSIVE AND IN LIEU OF ALL OTHER REPRESENTATIONS, WARRANTIES OR REMEDIES, WHETHER EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION IMPLIED WARRANTIES OF MECHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. IN THE EVENT OF ANY BREACH OF THIS AGREEMENT OR FAILURE OR DEFECT IN THE SERVICES WHATSOEVER, NEITHER FIBERLINK NOR ANY THIRD PARTY PROVIDER OR OPERATOR OF FACILITIES EMPLOYED IN THE PROVISION OF THE SERVICES SHALL BE LIABLE FOR (i) ANY INDIRECT, INCIDENTAL, PUNITIVE OR CONSEQUENTIAL DAMAGES (OR FOR ANY LOST PROFITS), OR (ii) FOR ANY OTHER LOSSES, DAMAGES OR LIABILITIES OF ANY KIND OR NATURE, HOWEVER CAUSED, WHETHER ARISING FROM THE ACTS, OMISSIONS OR NEGLIGENCE OF FIBERLINK OR ANY SUCH THIRD PARTY PROVIDER OR OPERATOR, AND WHETHER GROUNDED IN CONTRACT, TORT, (INCLUDING NEGLIGENCE) OR STRICT LIABILITY. FIBERLINK'S ENTIRE LIABILITY AND THE CUSTOMER'S EXCLUSIVE REMEDY SHALL AT FIBERLINK'S OPTION, BE EITHER RETURN OF THE SERVICE FEES PAID FOR THE CURRENT MONTH OF SERVICE AND THE SETUP FEES PAID, OR REPLACEMENT OF CONNECTION SERVICES OR PRODUCTS. IN ANY CASE, FIBERLINK'S ENTIRE LIABILITY UNDER OR ARISING OUT OF THIS AGREEMENT SHALL BE LIMITED TO THE AMOUNT THE CUSTOMER PAID FOR THE PRODUCTS OR SPECIFIC SERVICE THAT GAVE RISE TO THE LIABILITY.

12.   INDEMNIFICATION:  If any persons or entities ("Third Party Users") other than Customer shall have use of the Services through Customer or shall be connected to Customer through Internet Services provided by Fiberlink, then Customer agrees to indemnify and hold Fiberlink and any third party provider or operator of facilities employed in provision of the Services harmless from and against any and all claims, demands, suits, actions, losses, damages, liabilities, judgments or payments which may be asserted by Third Party Users, arising out of or relating to or occurring in connection with (i) any Defect in, or failure, suspension or termination of, the Services, incurred by Customer or any Third Party Users or other third parties, (ii) any services or goods provided, whether by Fiberlink or others, contemplated by this Agreement, (iii) any and all equipment failure, hardware failure, or software failure, (iv) any content disseminated by the Customer, and/or the Third Party Users, if any, connected to or having access to the Services, (v) Fiberlink's registrations and/or maintenance of Customer's domain name, and/or (vi) any and all incidental or consequential damages associated or arising in connection with any of the foregoing, including, but not limited to, all claims asserted by any third party or customer or client of the Customer.

13.   EVENTS OF DEFAULT:  Each of the following is an Event of Default by Customer under this Agreement, except that with respect to clauses (a) and (b) only such default will be an Event of Default if it is not fully cured or corrected within ten (10) days after notice to Customer in accordance with the notice provisions of this Agreement: (a) Customer shall fail to timely pay any invoice or other charge payable to Fiberlink; (b) Customer shall fail to observe or perform any obligation, action or covenant required of it under this Agreement; (c) the commencement of proceedings in bankruptcy, proceedings for the reorganization or readjustment of debts or for insolvency, under the Bankruptcy Code, as amended, or any part thereof, or under any law, whether state or federal, for the relief of debtors, now or hereunder existing, by or against Customer; (d) the appointment of a receiver or trustee for Customer or a substantial part of its assets; or (e) if Customer shall admit an inability to pay its debts as they mature. Upon the occurrence of an Event of Default, Fiberlink shall have the right to terminate this Agreement, suspend or terminate the provision of Services, and/or to seek any legal or equitable relief available under applicable law.

14.   PUBLICITY:  Customer expressly grants Fiberlink the right to display or use Customer's trade name, logo, trade mark or other names or marks on the Fiberlink website. Subject to the foregoing, Fiberlink shall not issue or make any public statement, press release or other announcement relating to the terms of or the existence of this Agreement without the prior written approval of the Customer, such approval not to be unreasonably withheld or delayed.

15.   CONFIDENTIALITY:  Both parties agree to retain in confidence this Agreement and all other non-public information and know how disclosed pursuant to this Agreement including without limitation all information which is either designated as confidential information, or by the nature of the circumstances surrounding disclosure, should reasonably be understood to be confidential ("Confidential Information"). Confidential Information includes without limitation: (1) information or material concerning business records and plans; marketing plans; financial statements; customer lists and records; trade secrets; technical information; products; inventions; product design information; pricing structure; discounts; costs; computer programs and listings; source code and/or object code; copyrights and other intellectual property and other proprietary information; (2) any information disclosed in written or other tangible form and marked "Confidential" or "Proprietary;" (3) oral information which is designated as confidential when disclosed and is reduced to writing within 30 days and marked "Confidential" or "Proprietary." Each party's Confidential Information shall, for a period of two (2) years following its disclosure: (i) be held in confidence; (ii) be used only for purposes of performing this Agreement; and (iii) not be disclosed except to the receiving party's employees, agents and contractors have a need-to-know or to the extent required by law (provided that prompt advance notice is provided to the disclosing party to the extent practicable). A party's Confidential Information shall not include information that (a) is or becomes a part of the public domain through no act or omission of the other party; or (b) was in the other party's lawful possession and had not been obtained by the other party either directly or indirectly from the disclosing party; or (c) is lawfully disclosed to the other party by a third party without restriction on

2

disclosure; or (d) is independently developed by a third party. In the event that either party breached the Confidentiality provisions of this Agreement, the aggrieved party shall be entitled to bring suit to recover damages that may be sustained and, in addition, shall be entitled to specific performance or a temporary or permanent injunction prohibiting and enjoining the other party, its subsidiaries, divisions and affiliates, or any current or former officers, directors, agents, licensees, lessees or employees from violating the Confidentiality provisions herein.

16. **INDEPENDENT CONTRACTOR:** Fiberlink is an independent contractor of Customer. Nothing contained herein shall in any way constitute an agency, partnership or joint venture between the parties or be construed to evidence the intention of the parties to constitute an agency, partnership or joint venture. Neither party, nor any of its employees, consultants, contractors or agents are agents, employees, joint venturers of the other, nor do they have any authority whatsoever to bind such other party by contract or otherwise. Neither party shall represent to the contrary, either expressly, implicitly, by appearance or otherwise. Customer shall be fully responsible for all withholding and paying of taxes and social security for its personnel, and for compliance with all applicable Federal and state employment laws, including but not limited to worker's compensation, unemployment insurance, affirmative action and other personnel related legal requirements.

17. **EXPORT COMPLIANCE:** Customer will comply with any export or import controls that may be imposed on the Services contained in this Agreement by the U.S. Government or any country or organization of nations within whose jurisdiction Fiberlink operates or does business. Customer shall at all time strictly comply with all such laws, regulations and orders, and agrees to commit no act which, directly or indirectly, would violate any such law, regulation or order.

18. **GENERAL PROVISIONS:**

  (a)   Entire Agreement: This Agreement and any amendments or addendums incorporated in this Agreement by reference constitute the entire Agreement between the parties and supersede all prior negotiations, proposals, or understandings of any nature, and may not be waived, amended or modified unless by a writing signed on behalf of each of the parties to this Agreement.

  (b)   Interpretation. This Agreement, including the Exhibits hereto, shall be construed without the aid of any canon or rule of law requiring interpretation against the party drafting or causing the drafting of an Agreement or the portions of an Agreement in question, it being agreed that all parties hereto have participated in the preparation of this Agreement.

  (c)   Headings: The parties acknowledge that the headings used in this Agreement are for convenience purposes only and shall not be construed to define or limit the parties' rights and remedies under this Agreement.

  (d)   Compliance with Law. Both parties warrant that its actions and services performed pursuant to this Agreement shall comply with all applicable Federal, state and local laws.

  (e)   Governing law, jurisdiction, venue: This Agreement shall be deemed by the parties to have been entered into, and shall be governed by, construed in accordance with, and interpreted and enforced pursuant to, the laws of the Commonwealth of Pennsylvania solely, except to the extent, if any, that federal law governs and supersedes Pennsylvania law. The parties agree that no party shall bring any action, claim or suit in any jurisdiction other than the Commonwealth of Pennsylvania with respect to any claims or causes of action arising out of this Agreement. Both parties agree to submit to the jurisdiction of the Court of Common Pleas of Montgomery County, Pennsylvania, and to the Federal District Court for the Eastern District of Pennsylvania, and to bring suit or other proceeding only and exclusively in such courts. Both parties waive any claims or defense based on venue or improper venue or on any theory, such as "forum non conveniens" which would suggest that a suit or proceeding be brought in another jurisdiction or in another venue. Both parties waive trial by jury in any action, complaint, suit or proceeding.

  (f)   Cost and expenses: Customer hereby agrees to pay all costs and expenses (including reasonable attorney's fees and expenses incurred by Fiberlink) in connection with the enforcement of this Agreement and/or any collection proceedings brought by Fiberlink to collect any obligations owed to Fiberlink by Customer for goods delivered or services performed or as otherwise agreed to by the parties under or pursuant to the terms of this Agreement or any related agreement of the parties or undertaking of the Customer.

  (g)   Severability: If any provision of this Agreement is held to be invalid or unenforceable in any jurisdiction, the other provisions hereof shall remain in full force and effect in such jurisdiction to the fullest extent permitted by law and the invalidity or unenforceability of any provision hereof in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.

  (h)   Waiver: Fiberlink and Customer shall have the right at all times to enforce the provisions of this Agreement in strict conformity with the terms of this Agreement, notwithstanding any conduct or custom of either in refraining from doing so at any time or times. The failure of Fiberlink or Customer at any time or times to enforce its rights shall not be construed as a waiver or modification of such right.

  (i)   Notices: Any notices or consents required or permitted by this Agreement shall be in writing and shall be deemed delivered when sent by certified mail, return receipt requested, or by overnight mail (i.e., Federal Express, UPS, etc.) requiring signature of the receiving party to the address listed in this Agreement.

  (j)   Authority: Customer warrants that the person signing this Agreement for Customer is authorized to do so, and that Customer has obtained all internal and external approvals and resolutions necessary to enter into this Agreement and make it binding on Customer.

  (k)   Third Party Beneficiaries: No rights are intended to be created however for the benefit of any third party donee, creditor, supplier or incidental beneficiary of a party hereto.

19. **ASSIGNMENT:** The Customer shall not sell, transfer, or assign this Agreement or the Services without the prior written consent of Fiberlink. Should Customer fail to obtain Fiberlink's consent then Fiberlink shall have the option, at its sole discretion, to accept or reject the proposed sale, transfer or assignment. The Customer will remain obligated under this Agreement upon an accepted sale, transfer or assignment. All of the provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and each of their respective successors and permitted assigns.

20. **FORCE MAJEURE:** Neither Fiberlink nor Customer shall be liable to the other for any delay or failure to perform (other than a failure to pay monies due and owing under this Agreement) arising out of causes beyond its reasonable control including, but not limited to, riots, epidemics, severe weather, acts of the other

3

party, failure of third parties upon whom Fiberlink reasonably relies for service, fire, flood, war, acts of the enemy, no availability of hardware or utility services, failure of hardware or software, failure of network or transmission facilities, unusually high traffic levels over the network, embargoes or work stoppages, labor disputes or strikes. Fiberlink and Customer shall notify each other promptly upon hearing of any event that may result in any delay or failure to perform. If the force majeure event occurs and continues to prevent substantial performance for more than thirty (30) days the other party has the right to terminate this Agreement.

21.    **ORDER OF PRECEDENCE:** This Agreement consists of the terms and conditions contained herein and all the Exhibits attached hereto and subsequently signed by the parties. In the event of a conflict among the documents, the order of priority shall be: ORDER OF PRIORITY INSTRUCTIONS.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first written above.

FIBERLINK COMMUNICATIONS CORPORATION

By: _____
            Signature  Edward J McCrosson
            Print Name and Title

By: _____
            Customer Signature
            Cavin O'Neal, CTO
            Print Name and Title

Full Business Address:

Fiberlink Communications Corporation

794 Penllyn Pike
Suite 100
Blue Bell, PA 19422

Phone:    1-800-LINK-NOW

Full Business Address:

Emergent Technologies

7117 Florida Blvd Suite 401 Baton Rouge, LA 70806

225-612-2160

4

## AMENDMENT NO. 1 - COMMUNICATIONS SERVICES AGREEMENT

Fiberlink Communications Corporation ("Provider") and Emergent Technologies ("Customer") hereby enter into this Amendment No. 1 (the "Amendment") to the Communications Services Agreement (the "Agreement") executed by the parties on February 1, 2002.

Except as provided herein, all other terms and provisions of the Agreement remain as set forth therein. Sections 8 of the Agreement is hereby deleted in its entirety and replaced with the following:

1.    **8.    CANCELLATION OF SERVICES:** Customer may cancel for convenience all of a portion of any Services by providing written notice of cancellation to Fiberlink thirty (30) days in advance of the effective date of cancellation. If such cancellation occurs during the first fourteen (14) months of the Service Commitment Period, Customer shall pay Fiberlink for all Services provided through the effective date of cancellation plus a cancellation charge equal to the following: (i) 100% of the minimum amount due for the unexpired portion of the first fourteen (14) months of the Service Commitment Period, plus (ii) 50% of the minimum amount due for the remaining unexpired portion of the Service Commitment Period. If such cancellation occurs after the first fourteen (14) months of the Service Commitment Period, Customer shall pay Fiberlink for all Services provided through the effective date of such cancellation plus a cancellation charge equal to 50% of the minimum amount due for the unexpired portion of the Service Commitment Period.

This Amendment #1 together with the Agreement (and any attachments, addenda and supplements thereto) shall be the complete and exclusive statement of the Agreement between the parties as to the subject matter of the Agreement, and shall be binding upon each of the parties hereto, their respective successors and to the extent permitted their assigns. In the event of a conflict between the terms and conditions hereof, and the terms and conditions of the Agreement, the terms and conditions hereof shall govern.

IN WITNESS WHEREOF, the parties have executed this Amendment #1 on February 1, 2002.

Fiberlink Communications                              Emergent Technologies

By: _____          By: _____
Signature                                             Signature

Edward J McGuss                                       Cavin O'Neal
Name                                                  Name

COC                                                   Chief Technical Officer
Title                                                 Title

1/23/01                                               1/17/02
Date                                                  Date

welcome to your global office.

# F BERLINK

Exhibit A - Communications Services Agreement                 Quote No. KH20-ET

1. <u>Services</u>. Fiberlink will provide dial-up Internet connectivity ("remote access") to Customer's end users via a network of Internet points of presence ("POPs") allowing TCP/IP access to the Internet and to Customer's local network ("Services"). End users shall have access to some combination of Flat Rate POPs and/or Usage Based POPs. From time to time Fiberlink may make additions and deletions to the underlying networks, POPs, and other facilities used to provide the Services and shall make automatic updates to the software and Services provided to Customer, including phone book and dialer updates.

2. <u>Term</u>. The Term of the CSA shall be for a period of 39 months commencing on the date this Addendum is signed by both parties (the "Effective Date"). The first 2 months of the Term shall constitute the Ramp-Up Period.

3. <u>Monthly Minimum</u>. Monthly minimum commitment = $<u>See Pricing Chart</u>. During the Service Commitment Period, Fiberlink shall invoice Customer, and Customer shall pay, for the Services based on Customer's actual usage at the rates set forth in this Agreement, or $<u>See Pricing Chart</u>, whichever is greater. This monthly minimum commitment shall not apply during the Ramp-Up Period (Customer shall be responsible for actual usage charges incurred during the Ramp-Up Period). Fiberlink shall also invoice Customer for recurring and non-recurring charges. <u>See</u> Pricing Chart.

4. <u>Rate Plans</u>. Customer shall assign each of its end users to one or both of the rate plans: Usage Based or Domestic Flat Rate. Please check the appropriate line(s).

                ☒ Domestic Flat Rate                ☐ Usage Based

Charges for each rate plan shall be calculated separately pursuant to the rate plans as set forth below and in the Pricing Chart:

        A. The charge for each Usage Based end user shall equal the number of minutes of actual usage multiplied by the hourly rates set forth in the Pricing Chart. <u>See</u> Pricing Chart.

        B. The charge for each Domestic Flat Rate end user shall be $15.50 per month for up to 150 hours per month of calls to Flat Rate POPs in the U.S. and Canada. There shall be an additional charge at the rate of $1.60 per hour for any end user's usage of Flat Rate POPs in the U.S. and Canada that exceeds 150 hours in a month.

5. <u>Additional Rate Provisions</u>.

        A. All end users shall have access to toll-free 8xx numbers in the United States at the rate of $6.50 per hour, and Canada at the rate of $6.50 per hour.

        B. Once an end user accesses a POP under one of the pricing options above, Customer shall be billed monthly for that end user as provided above until Customer notifies Fiberlink in writing that the end user's account should be terminated. NOTE: If Customer subscribes to both the Flat Rate and Usage Based Plans, Fiberlink encourages Customer to educate its end users as to how to minimize costs through use of Flat Rate POPs whenever available.

        C. All usage is rounded up to the nearest minute. The rates set forth in this Exhibit A cover only analog dial-up services. If Customer or its end users access the Internet via ISDN or other non-analog media, an additional surcharge will apply.

D. All usage shall count towards satisfaction of Customer's monthly minimum commitment.

6. <u>Confidentiality</u>. If Fiberlink provides to third parties any information reflecting Customer's usage of the Services (such as information reflecting network performance and end user experience), Fiberlink shall delete from the information any references to Customer and its end users, as well as any other information that reasonably could be used to identify Customer or its end users.

7. <u>Exclusivity</u>. During the Term, Customer shall not purchase, or enter any agreement to purchase services from any third party which are the same as, or substantially similar to, the Services described herein.

8. <u>Customer License Agreement</u>. The parties agree that the Services will be licensed to the Customer, under a license according to the terms and conditions set forth in the Customer's End User License Agreement, as set forth on each Customer end user's dialer.

# PRICING CHART

**Monthly Minimum =**

| | |
|---|---|
| Month: 3 | $2,500 |
| Months 4-9: | $5,000 |
| Months 10-15: | $12,000 |
| Months 16-27: | $25,000 |
| Months 28-39: | $50,000 |

## I.    Domestic Flat Rate Plan:

U.S. and Canada       $15.50/account
        (150 hrs./Flat Rate POPs only)

Excess Domestic Flat Rate    $1.60/hour
        Usage (over 150 hrs.)

## II.    Usage Based Rate Plan:

| Geographic Region: | Per hour |
|---|---|
| U.S. and Canada | $2.00 |
| Western Europe | $2.90 |
| Pacific Rim | $4.35 |
| Latin and South America | $4.35 |
| Rest of World | $6.50 |

## III.    Integrated Security Services:

| Quantity (# End User Devices) | Price per month | Total |
|---|---|---|
| Months 3-8:     25 | $3.00 | $75 |
| Months 9-14:   100 | $3.00 | $300 |
| Months 15-26:  500 | $3.00 | $1,500 |
| Months 27-38:  1,000 | $3.00 | $3,000 |

**VII.    Other Charges – Recurring and Non-Recurring:**

Start-Up Fees:
    Services                              $1,000
    Integrated Security Services   $5,000
Monthly Fees:
    FGR Service Fee                   $1,500

# FIBERLINK GLOBAL REMOTE TERMS

## GEOGRAPHIC DESCRIPTION OF REGIONS*

TIER A:  UNITED STATES AND CANADA

TIER B: WESTERN EUROPE
Austria, Belgium, Denmark, Finland, France, Germany, Greece, Iceland, Ireland, Italy, Luxemborg, Netherlands, Northern Ireland, Norway, Portugal, Scotland, Spain, Sweden, Switzerland, United Kingdom (unless separately priced).

TIER C:  ASIA/PACIFIC
Australia, China, Hong Kong, India, Indonesia, Japan, Korea (Rep), Malaysia, New Zealand, Phillipines, Singapore, Taiwan, Thailand.

TIER D:  LATIN AND SOUTH AMERICA
Argentina, Aruba, Bahamas, Barbados, Bermuda, Bolivia, Brazil, Cayman Is., Chile, Colombia, Costa Rica, Dominican Republic, Ecuador, El Salvador, French Guinea, Guadeloupe, Guatemala, Guyana, Haiti, Honduras, Jamaica, Martinique, Mexico, Netherlands Antilles, Nicaragua, Panama, Paraguay, Peru, Puerto Rico, US Virgin Isl., Uruguay, Venezuela.

TIER E: REST OF WORLD
All other countries and locations.

*This listing is provided solely to determine applicable pricing, assuming the availability of service. Service may not always be available in each country and may vary during the Term of the Agreement. Inclusion of a country on this list does not guarantee the availability of service.

welcome to your global office.

# F BERLINK

Exhibit B - Communications Services Agreement                    Quote No. KH20-ET

1. Integrated Security Services. In addition to the remote access solution described in the CSA, Fiberlink shall provide Customer with a managed personal firewall intrusion detection system and policy enforcement ("Integrated Security Services"). From time to time Fiberlink may make alterations to the underlying network and other facilities used to provide the Integrated Security Services. Fiberlink's Integrated Security Services includes:

- NetworkICE's BlackICE Agent for installation on Customer's personal computers
- NetworkICE's ICEcap management server hosted at Fiberlink Network Operations Center

2. Term. The Term of this Addendum shall be coterminous with the term of the CSA.

3. Monthly Charges. During the Service Commitment Period, Fiberlink shall invoice Customer, and Customer shall pay, for the Integrated Security Services as set forth in the Pricing Chart. See Pricing Chart.

4. Customer License Agreement. Customer is subject to the NetworkICE End User License Agreement attached hereto as Exhibit C.

 welcome to your global office

 F BERLINK

## EXHIBIT C

1.      **Limited Use License.**  In consideration of your agreement to be bound by the terms of this Agreement, Fiberlink hereby grants to you a non-exclusive, non-transferable license to use internally the BlackICE software application which is owned by Network ICE Corporation ("Network ICE") and licensed to Fiberlink with the right to sublicense to you (the "Software") on a single computer, according to the terms and conditions of this Agreement.  All rights not expressly granted herein are retained by Network ICE and its licensors, as the case may be.

2.      **Limitations.**  The software is protected by U.S. copyright law and international treaties.  You may not reverse engineer, reverse compile, modify or prepare derivative works from the Software.  You may not copy (except as set forth herein), sell, rent, lease, sublicense, assign, loan, time-share, share through an internal computer network or otherwise transfer or distribute (except as set forth herein) the Software.  You may make one (1) copy of the Software for backup or archival purposes only, so long as Network ICE's copyright notices are reproduced on such copies.  You shall not, and shall not permit a third party to remove any identification, copyright or other notice from the Files.

3.      **Ownership of Files.**  This license is not a sale of the Software or any copy thereof.  All worldwide ownership of and rights, title and interest in and to the Software, and all copies and portions thereof, including without limitation, all copyrights, trademark rights, trade secret rights and other proprietary rights therein and thereto, are and shall remain exclusively in Network ICE and its licensors.

4.      **Termination.**  The license granted herein is effective until terminated.  This License will terminate immediately without notice upon the termination of the license agreement between Fiberlink and Network ICE.  The license will also terminate immediately without notice if you fail to comply with any material provisions of this License Agreement.  Upon termination you shall destroy or return to Network ICE all copies of the Software or portions thereof.  YOU ACKNOWLEDGE AND AGREE THAT, UPON THE TERMINATION OF THIS LICENSE AGREEMENT, THE SOFTWARE WILL BE DISABLED AND WILL BE OF NO FURTHER USE TO YOU.  The provisions of this License Agreement other than the license grant herein, shall survive termination.

5.      **Disclaimer.**  NETWORK ICE PROVIDES THE SOFTWARE ON AN "AS IS" BASIS. NETWORK ICE MAKES NO WARRANTIES WITH RESPECT TO THE SOFTWARE OR THE AVAILABILITY OF NETWORK ICE'S SITE ON THE WORLD WIDE WEB OR THE SITE YOUR PURCHASED THE SOFTWARE ON THE WORLD WIDE WEB, EXPRESS, IMPLIED OR STATUTORY, AND NETWORK ICE EXPRESSLY DISCLAIMS ALL OTHER WARRANTIES, INCLUDING BUT NOT LIMITED TO THE IMPLIED WARRANTIES OF DUE CARE, SATISFACTORY QUALITY, NON-INFRINGEMENT OF THIRD PARTY RIGHTS, MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.

*welcome to your global office.*

# F BERLINK

6.     **Limitations of Liability.** YOU AGREE THAT IN NO EVENT WILL NETWORK ICE OR ITS LICENSORS BE LIABLE TO YOU OR ANY THIRD PARTY CLAIMING THROUGH YOU FOR THE RESULTS OF YOUR USE OF THE SOFTWARE, YOUR INABILITY OR FAILURE TO CONDUCT YOUR BUSINESS, OR FOR ANY SPECIAL, INCIDENTAL, CONSEQUENTIAL, INDIRECT OR PUNITIVE DAMAGES EVEN IF NETWORK ICE HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. THE CUMULATIVE LIABILITY OF NETWORK ICE AND ITS LICENSORS TO YOU FOR ALL CLAIMS ARISING UNDER THIS AGREEMENT, WHETHER IN CONTRACT OR TORT, INCLUDING NEGLIGENCE, SHALL NOT EXCEED THE LIST PRICE OF THE SOFTWARE.

7.     **Fiberlink Relating to the Software.** NetworkICE is an intended third party beneficiary of this License Agreement and is entitled to enforce its terms.

8.     **Entire Agreement.** This Agreement sets forth the entire understanding and agreement between you and Network ICE and supersedes all prior and/or contemporaneous proposals or communications, oral or written, between the parties relating to the subject matter of the Agreement. No modification of the Agreement shall be binding unless it is in writing and is signed by authorized representatives of both parties.